IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEONARD WADDELL, #444570 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. DKC-15-3286 |
| MARYLAND PRE-TRIAL DIVISION BCDC | * | |
| CORRECTIONAL OFFICER ERIC PULLEY CORRECTIONAL OFFICER WATKINS | * | |
| CORRECTIONAL OFFICER SMITH CORRECTIONAL OFFICER DYER | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

On October 28, 2015, the court received for filing Leonard Waddell's ("Waddell"), self-represented 42 U.S.C. § 1983 civil rights complaint. The complaint seeks compensatory damages for assaults that occurred at the hands of correctional officers on June 26, 2015 and July 13, 2015, while he was detained at the Baltimore City Detention Center. ECF No. 1. A motion to dismiss and or for summary judgment has been filed on behalf of the Department of Pretrial Detention and Services and the Baltimore City Detention Center ("BCDC"). ECF No. 18. That motion remains unopposed. Defendants Pulley, Smith, Dyer and Watkins have filed a motion to dismiss and/or for summary judgment (ECF No. 23)[1] as well as a legal memorandum (ECF No. 23-1)[2], and declarations and exhibits (ECF No. 23-2 to ECF No. 23-7). Waddell has filed an opposition and cross-motion for summary judgment (ECF No. 26).[3] Defendants have

---

[1] Defendants Pulley, Smith, Dyer and Watkins filed a motion for extension of time to file a response. ECF No. 20. The motion remains pending and shall be granted *nunc pro tunc*.

[2] All exhibits are referenced by their electronic filing number.

[3] Waddell has also filed a motion to consolidate and amend complaint and a motion to appoint counsel. ECF Nos. 22 & 29.

filed a reply and opposition to Waddell's cross-motion for summary judgment. ECF No. 27. Waddell has also filed a reply to Defendants' opposition to his cross-motion for summary judgment. ECF No. 28. The matter is ready for disposition; no hearing is necessary.[4] *See* Local Rule 105.6 (D. Md. 2016).

### I. Background

Waddell states that on the night of June 26, 2015, he was suffering from an ankle injury and was unable to obtain medical attention. He contends that Correctional Officer Watkins refused to get him medical attention, telling Waddell it was his "problem because I had got myself locked-up." ECF No. 1, p. 4. Waddell claims that he began to yell and scream at Watkins to express his pain and this in turn angered Watkins. Waddell alleges that Watkins verbally abused and threatened him. He additionally claims that later that night while in his cell Watkins threw trashcans full of water, laden with urine, on him. Waddell asserts that he was not given clean sheets or the opportunity to dry and clean his cell. He claims that the threats lasted for a week and he continued to be deprived of medical attention. *Id.*

Waddell also claims that on the afternoon of July 13, 2015, he was physically beaten by Correctional Officers Pulley, Smith, and Dyer. He alleges that Dyer came into his cell and struck and kicked him several times. Waddell further asserts that Correctional Officer Smith subsequently arrived and dragged him by his cuffed hands out of his cell onto the top tier. He contends that he received "blows" from both Dyer and Smith for several minutes. ECF No. 1, p. 5. Waddell claims that he was moved to the dayroom where he was beaten to the floor by Smith and Dyer. He alleges that Officer Pulley arrived and began punching him in the head. Waddell

---

[4] At the time he filed this action, Waddell was housed at the Maryland Reception Diagnostic and Classification Center. He was subsequently transferred to the Patuxent Institution and then to the Roxbury Correctional Institution. *See* ECF Nos. 1, 22, 28, & 29.

states he was escorted to the medical department where "it was shown" that he had wounds to his head, back, and elbows. He alleges that the officers filed a false incident report resulting in his being found guilty of in-house charges and being placed on segregation.[5] *Id.*

## II. Standard of Review

**Motion to Dismiss Filed by Department of Pretrial Detention and Services and the Baltimore City Detention Center.**

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). Because Waddell is self-represented, his submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). In evaluating the complaint, the court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir.

---

[5] Waddell appears to claim that while on segregation he was beaten by other detainees and was transferred to the Maryland Reception Diagnostic Center on August 22, 2015. He contends that he attempted suicide the following day. ECF No. 1, pp. 5-6.

1989), nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Filed by Defendant Correctional Officers

Defendants Dyer, Pulley, Smith, and Watkins' motions are styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are

4

deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167. The court is more than satisfied that given the exhibits presented here, it has ample information with which to address the motion as filed for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the

evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

### III. Discussion

Defendants Department of Pretrial Detention and Services and the Baltimore City Detention Center maintain that as they are immune from liability under the Eleventh Amendment and they have not consented to this litigation, a § 1983 action cannot be maintained against them. ECF No. 18.

Pulley, Smith, Watkins and Dyer argue that the complaint raised against them is subject to dismissal because Waddell has failed to exhaust his administrative remedies under 42 U.S.C. § 1997e. They assert that BCDC maintains a four step grievance process as outlined in Division of Pretrial Detention and Services ("DPDS") Directive 180-1. *See* ECF No. 23-2 at Harris Decl; ECF No. 23-3. They affirm that although Waddell did have access to the grievance system and did file a grievance regarding the ventilation conditions at BCDC, he did not exhaust a single administrative remedy referencing any of the allegations in the complaint. ECF No. 23-4.

Defendants further argue that although Waddell claims that he filed a grievance with the Inmate Grievance Office ("IGO"), *see* ECF No. 1, p. 2, the IGO serves Division of Correction and Patuxent Institution inmates. The IGO has no authority to entertain the grievances of a pretrial detainee, such as Waddell. *See* Md. Code Ann. Corr. Servs. ("CS") §10-207(a). They further assert that the IGO has no record of Waddell filing a grievance with that agency. ECF No. 23-7 at Neverdon Decl.

In his opposition response, Waddell claims that he arrived at the pretrial detention facilities in May of 2015, and was not given an orientation "confirming my attendance and understanding" of the administrative remedy process at BCDC. He contends that while he understands the requirements of exhaustion under 42 U.S.C. § 1997e, he is no longer a pretrial

detainee and the remedies at BCDC are no longer available to him. He alleges that he is left with "no available remedies to exhaust." ECF No. 26-1.

Waddell notes that the infraction charged him with engaging in disruptive behavior, assaulting staff, possessing or using a weapon, and disobeying an order. He challenges statements made in the July 13, 2015 notice of infraction that he had a cup in the waistband of his shorts, claiming that the allegation was a fallacy and the infraction was fabricated to justify the force used against him. ECF No. 26-2. He further contends that the statements made in the infraction regarding his aggressive behavior are not supported as he was not handcuffed behind his back upon leaving his cell. *Id*. Waddell claims that he was subject to the use of excessive force.

In their reply to Waddell's opposition and cross-motion for summary judgment, Defendants Smith, Pulley, Watkins and Dyer argue that Waddell's response was untimely filed, his motion for summary judgment lacks "any legal or factual support," and Waddell failed to exhaust his administrative remedies. ECF No. 27. In his reply Waddell asserts that he should be excused from filing an untimely response due to his confinement and the court should examine Defendants' actions. ECF No. 28. Lastly, Waddell claims that the day after the July 2015 assault, he attempted to commit suicide and was transferred to a mental health unit. He claims that he informed staff of the assault thinking that they would assist him, but they only prescribed medication. He claims that he avoided "bothering" BCDC officers as he was fearful of retaliation. *Id*.

### IV. Analysis

The Department of Pretrial Detention and Services and the BCDC are not liable because they have not waived their sovereign immunity under the Eleventh Amendment to suit in federal

court. Defendant Department of Pretrial Detention and Services is a state agency operating as a division of the Maryland Department of Public Safety and Correctional Services. *See* Md. Code. Ann., Corr. Servs., Art., § 5-201(a). Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, the complaint against the Department of Pretrial Detention and Services is subject to dismissal.

Defendant BCDC argues that it is a component of the Department of Pretrial Detention and Services and, as such, is also entitled to immunity. As a threshold matter, the court notes that BCDC is not a "person" subject to suit under 42 U.S.C. § 1983. A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). The § 1983 claim against BCDC is subject to dismissal.

Defendants Pulley, Smith, Dyer, and Watkins assert that Waddell's claim has not been properly presented through the administrative remedy procedure and therefore it must be dismissed pursuant to 42 U.S.C. §1997e. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. § 1997e:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of

his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Bock*, 549 U.S. at 219. A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones*, 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725**.**

In *Ross* the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation

that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Waddell is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is

also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The Maryland Department of Pretrial Detention has made a grievance procedure available to adult detainees to address issues regarding the conditions of confinement, actions of staff, services received, and other residents and/or incidents occurring under the authority and control of the Division of Pretrial Detention and Services that have personally affected the resident. ECF No. 23-3.

To pursue a grievance, a detainee may take advantage of a four-step process. First, he may initiate a grievance by completing a Resident Complaint Form within 15 days from the date upon which the incident occurred or on which the resident first learned of the incident, whichever is later (Step I). The complaint form shall be submitted to the Resident Grievance Office staff. All allegations of assault by staff on residents shall be immediately referred to the Bureau of Special Operations via the Shift Commander. ECF No. 23-3

A resident who wishes to appeal the Step I decision shall complete a motion for grievance committee form (Step II) and shall submit the form to the Resident Grievance Office staff. *Id.* The staff shall schedule the complaint to be reviewed by the Resident Grievance Procedure Committee, which, after the hearing, shall vote on the matter and possible resolutions. A resident who wishes to appeal the Step II decision to the Warden may do so by completing a motion to appeal to the Warden and submitting the form (Step III) to the Resident Grievance Office staff. A detainee who wishes to appeal the Step III decision to the Assistant Commissioner of the Division of Pretrial Detention and Services shall complete a motion to appeal to the Commissioner form (Step IV). The grievance process applies to the majority of detainee complaints. However, it does not apply to challenges to notices of infraction, matters

that are in the course of litigation, or matters involving court-ordered programs, court commitment orders, and state statutes. ECF No. 23-3.

According to his complaints, Waddell remained at the BCDC until the end of August of 2015.[6] He plainly did not exhaust his available remedies while housed at BCDC. His claim that he was unaware of the remedy process is belied by the fact that he utilized the process on July 19, 2015, less than one week after the alleged assaults, to file a remedy regarding the ventilation in his housing unit. Further, the fact that he was placed on a mental health ward and given medication, does not excuse him from filing his remedies. At no point does he state that the remedies were unavailable to him or that his condition impinged on his ability to file grievances. Finally, Waddell's claim that he did not file an administrative remedy out of an overall fear of retaliation does not carry weight. There is no claim that Waddell had been previously threatened, intimated, or assaulted for using grievance procedures. *See Garcia v. Baca,* 2008 WL 5119156, at *5 (C.D. Cal. Dec. 2, 2008) ("the exhaustion requirement applies to all claims and something more than a generalized fear of retaliation is required before the Court will overlook the failure to even attempt to utilize the grievance process prior to filing suit"); *Taylor v. Banks,* 2007 WL 179233 at *1 (E.D. Ark. June 13, 2007) (dismissing complaint of plaintiff who argued that he could not exhaust his administrative remedies because of fears of retaliation); *Harrison v. Stallone*, 2007 WL 2789473, at *6 (N.D. N.Y. Sept. 24, 2007) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims"). The Step I grievance form, which permits categorization of grievances through a checklist, confirms that Waddell had a remedy available to him for the claims raised in this

---

[6] In *Waddell v. Osbourne*, Civil Action No. DKC-16-139 (D. Md.), Waddell claims that he was assaulted by other detainees on August 22, 2015, during the depopulation of BCDC.

action. Waddell had the opportunity to grieve complaints involving medical care and complaints against staff, and chose not to do so. There can be no doubt that Waddell failed to exhaust his administrative remedies at any stage on any of his claims in this lawsuit. Defendants Pulley, Smith, Watkins, and Dyer's motion to dismiss and/or for summary judgment, construed as a motion for summary judgment, shall be granted due to Waddell's failure to exhaust his administrative remedies.

### V. Motion to Consolidate and to Amend Complaints

Waddell filed two other civil rights complaints. In *Waddell v. MRDCC, et al.*, Civil Action No. DKC-15-3517 (D. Md.), he claimed that he was not provided immediate medical care after he was assaulted by another inmate in November of 2015 and was housed in a condemned cell. In *Waddell v. Osborne, et al.*, DKC-16-139 (D. Md.), he raised a failure-to-protect claim against several MRDCC officers, claiming that during a "depopulation" move, he was assaulted by 15 other prisoners on August 22, 2015, including Tavon Lee. He claimed that the officers were placed on notice of his difficulty with Lee, yet he was placed in a cell with him at MRDCC and sustained an injury to his head in November, 2015. *Waddell v. MRDCC, et al.*, Civil Action No. DKC-15-3517 (D. Md.) was dismissed after briefing on September 9, 2016. *Waddell v. Osborne, et al.*, DKC-16-139 (D. Md.) remains pending.

In his motion to consolidate or amend his complaint, Waddell seeks to consolidate all three complaints and to amend them to include the names of additional Defendants and additional allegations surrounding his November 2015 housing in a cell at the Metropolitan Transition Center and a vehicle collision that occurred on January 7, 2016. ECF No. 22. The motion shall be denied. The newly named Defendants and allegations have no direct connection to the medical and excessive force claims raised here.

### VI.  Motion to Appoint Counsel

Waddell filed a motion to appoint counsel after the motions were briefed.  ECF No. 29.  He claims that he is unable to afford counsel, his imprisonment will greatly limit his ability properly to litigate his case, the issues involved in this case are complex, he has a "serious" mental disorder which affects his ability to litigate properly the case, he has extremely limited access to the law library and limited knowledge of the law, he has unsuccessfully attempted to obtain counsel to represent him, trial will involve conflicting testimonies and counsel would better enable him to present evidence or cross examine witnesses, and he has a limited level of knowledge of the law.  *Id*.

Although 28 U.S.C. § 1915(e)(1) permits a court to request an attorney to represent an indigent litigant, it "does not authorize the federal courts to make coercive appointments of counsel."  *Mallard v. U.S. District Court for the S. Dist. of Iowa,* 490 U.S. 296, 309–10 (1989).  A district court need not request an attorney's assistance pursuant to § 1915(e)(1) unless the case presents complex issues or exceptional circumstances.  *See Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard*, 490 U.S. at 298.  Exceptional circumstances include a litigant who "is barely able to read or write," *id*. at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012).

This case, which alleges that Waddell was refused medical care, and subject to threats and excessive force from BCDC correctional officers, presents no clear, exceptional circumstances warranting representation pursuant to § 1915(e)(1).  Although the Defendants' motion will be granted, Plaintiff capably filed his self-represented complaint, motions, memorandum and other papers and has failed to show a particular need or exceptional

16

circumstances which would require the assistance of a trained practitioner. Therefore, the motion to appoint counsel shall be denied.

A separate Order shall be entered reflecting the Opinion set out herein.


February 10, 2017                   _____/s/_____
                                            DEBORAH K. CHASANOW
                                            United States District Judge